JEWEL COMPANIES, INC., APPELLANT, *v.* PORTERFIELD,
TAX COMMR., APPELLEE.

(No. 69-448—Decided February 11, 1970.)

98

*Messrs. Wright, Harlor, Morris, Arnold & Glander, Mr. C. Emory Glander* and *Mr. John C. Hartranft*, for appellant.

*Mr. Paul W. Brown*, attorney general, and *Mr. Jon A. Ziegler*, for appellee.

MATTHIAS, J. At the outset, we should note that appellee has contended that appellant failed to sustain the burden of proof of exempt use before the Board of Tax Appeals.

Appellee argues, and the record shows, that appellant's only witness to testify before the board had no first hand knowledge of the use of this particular truck. However, the record also shows that the witness testified that all trucks of this type owned by appellant are used exclusively in the operation of its Home Shopping Service in the manner described by the witness.

The Board of Tax Appeals might have chosen to base its decision upon appellant's failure to sustain its burden of proof of exemption, but the board did not, choosing instead to base its decision solely upon the merits.

Our review in this type of case is limited to a determination as to whether the decision of the Board of Tax Appeals is unreasonable or unlawful. *Hoffmann-LaRoche, Inc.,* v. *Porterfield* (1968), 16 Ohio St. 2d 158; Section 5717.04, Revised Code.

It does not matter whether we might have weighed the evidence differently from the Board of Tax Appeals if we had been making the original determination. As long as there is evidence which reasonably supports the conclusion reached by the board, its decision must stand.

We reach then the primary question raised in this appeal: Whether the use of appellant's motor vehicle is such that it can be considered to be used "directly in making retail sales" so as to entitle it to exception from the use tax.

Section 5739.01(E), Revised Code, excepts from the sales tax, and thus, under Section 5741.02(C)(2), from the use tax, items used "directly in making retail sales."

Section 5739.01(E), reads, in part as follows:

" '*Retail sale*' and '*sales at retail*' include all sales except those in which the purpose of the consumer is * * * to use or consume the thing transferred * * * directly in making retail sales.*" (Emphasis added.)

The term "making retail sales" is defined in Section 5739.01(P), Revised Code, as follows:

"(P) '*Making retail sales*' means the effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to transfer title to

or possession of the item sold, but *does not include the delivery of items* thereafter *nor the preliminary acts of promoting or soliciting the retail sales.*" (Emphasis added.)

The Tax Commissioner's rule in relation to the use of motor vehicles in making retail sales is TX-15-12, which reads, in part, as follows:

"Motor vehicles * * * sold to a vendor *whose purpose and primary use thereof is to carry a stock of merchandise from which 'retail sales' are made* are deemed to be used or consumed directly in making retail sales and not subject to sales tax." (Emphasis added.)

From the record in this case, it appears evident that appellant's truck is used in several ways. It is the primary use which is determinative of taxability. Incidental uses are not controlling. *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539.

Appellant's truck is used in the following three ways:

1. As transportation for a route salesman to solicit orders for future sales (non-exempt use).

2. As a sales and stock area from which a route salesman may make present sales of "impulse" items (exempt use).

3. As a delivery vehicle for route salesmen to deliver previously ordered merchandise (non-exempt use).

An examination of the record clearly shows that the primary uses of appellant's vehicle are for the solicitation of future sales and the delivery of previously ordered merchandise. It is true that some sales made directly from the vehicle are of merchandise stocked therein. However, it is evident from the record that the direct sales are actually only a small part of the salesman's business.

The appellant contends that the orders herein are really only tentative orders, because the customer is not obligated to take the merchandise when the salesman delivers it. Appellant claims that because of this the sale does not take place until the merchandise is delivered, is accepted and is added to the customer's account. Thus, appellant argues that the vehicle is used primarily "to

carry a stock of merchandise from which 'retail sales' are made."

To accept this argument at its face value would be to ignore the realities of appellant's operation. According to appellant's own witness, 80 to 85 per cent of the orders are accepted as made. That means that in 80 to 85 per cent of its "sales" calls the truck is used primarily as a delivery vehicle.

The decision of the Board of Tax Appeals reveals that the board determined that most of the transactions of the route salesmen took place at the door of or inside of his customers' homes. There is some indication that the board might have ruled in favor of appellant were the customers to come to the truck rather than the route salesman to them. As we interpret the board's reasoning, more customers coming to the truck might have made the "sales and stock area" use of the truck the primary use, and thereby gained appellant an exemption. This is an interesting suggestion by the board but does not affect the determination made in the instant case.

We agree with the board that:

"Upon the above set of facts it is clear that the appellant has not established that the truck here in question was entitled to tax exception under the statute or under the Tax Commissioner's rule. In other words the evidence could not support a conclusion that the primary use of the truck was for an excepted use."

*Decision affirmed.*

TAFT, C. J., HERBERT, DUNCAN and CORRIGAN, JJ., concur.

O'NEILL and SCHNEIDER, JJ., dissent.