SATULLO ET AL., APPELLANTS, *v.* WILKINS, TAX COMMR., APPELLEE.

[Cite as *Satullo v. Wilkins,* 111 Ohio St.3d 399, 2006-Ohio-5856.]

(No. 2006–0046—Submitted September 20, 2006—Decided November 29, 2006.)

**Per Curiam.**

{¶ 1} The appellants, S. Sandy Satullo II and Copper Kettle Marina, Inc., argue in this appeal as of right that they do not owe Ohio use tax for their use of two boats between November 1, 1995, and October 31, 1999. The Board of Tax Appeals ("BTA") found that the state Tax Commissioner had properly imposed a use tax on the appellants. According to the BTA, the appellants did not purchase the boats with the intent to resell them, and therefore the R.C. 5739.01(E) resale exception to the sales and use tax did not apply. The BTA likewise rejected the appellants' request for a tax exemption under R.C. 5741.02(C)(4), which exempts the transient use of tangible personal property in Ohio "by a nonresident tourist or vacationer."

{¶ 2} For the reasons that follow, we affirm the BTA's decision.

### Facts

{¶ 3} Copper Kettle is an Ohio corporation that began selling boats in the 1970s. From its 12,000–square–foot showroom in Lorain, Ohio, the company not only sold boats but also serviced and stored them.

{¶ 4} In the mid–1990s, the president of Copper Kettle wanted the company to serve as a dealer for a British-made boat model called the Sunseeker. Copper Kettle's line of credit was too small, however, for the company to purchase one of the boats. The founder of Copper Kettle—S. Sandy Satullo—used his own funds in 1995 to acquire one 55–foot Sunseeker boat for $750,000. Satullo was listed as the buyer of the boat on the sales contract prepared by the seller—Hideaway Yacht Sales, Inc., of Pompano Beach, Florida—although the BTA found that the buyer's signature on the document appeared to be that of Satullo's son, appellant S. Sandy Satullo II. No documents signed by the elder Satullo suggest that he purchased the Sunseeker for Copper Kettle, although Copper Kettle was listed as

the buyer of the boat on a document titled "Order Acknowledgement and Agreement of Sale" that was also prepared by the seller, Hideaway Yacht Sales.

{¶ 5} Neither the Satullos nor Copper Kettle paid sales tax in Florida when the Sunseeker was purchased there in 1995. In January 1998—more than two years after the Sunseeker was purchased—the younger Satullo signed an affidavit stating that no sales or use tax was owed in Florida in connection with that purchase because the boat had been acquired with the intent to resell it.

{¶ 6} Appellant Satullo and two other persons sailed the Sunseeker from Florida to Ohio in 1996. That summer and the following summer, it was docked in Ohio and Michigan. The boat was stored in Florida during the winter months. While the Sunseeker was in Ohio, it was docked at private marinas in Bratenahl and Port Clinton, and also at a public boathouse in Lakewood.

{¶ 7} Appellant Satullo testified that the Sunseeker was being demonstrated for resale during the summer months when it was in Ohio. He denied using the boat for his own personal enjoyment. The BTA found, however, that the private marinas and limited-public-access sites where the Sunseeker was stored were not typical locations where boats were offered for sale. Also, correspondence in the record between an insurance broker and an insurance agency indicates that the Satullos listed the owner of the Sunseeker as Copper Kettle "for tax purposes only," and the insurance carrier noted that the boat would be "used 100%" for "pleasure use by S. Satullo, Jr. and S. Satullo, Sr." The younger Satullo arranged for the purchase of the insurance on the boat.

{¶ 8} Although the younger Satullo listed himself as the owner of the Sunseeker in 1996 on a registration form for a private marina in Port Clinton, he denied that he had ever owned the boat when the Tax Commissioner's office inquired about it two years later. The boat was not listed on Copper Kettle's 1996 personal property tax return or on Copper Kettle's accounting records, and it was never displayed at any boat shows in Ohio, Michigan, or Florida.

{¶ 9} In 1998, the Sunseeker was traded in for a larger boat made by Azimut, an Italian manufacturer. The seller of the 70–foot Azimut yacht was Richard Bertram, Inc., a Florida boat dealer. The elder Satullo wrote two personal checks to Richard Bertram, Inc. in late 1997 and early 1998, and he also provided an additional cashier's check to that company. The checks totaled more than $1.7 million, and those funds, together with the $645,523 trade-in value of the Sunseeker, were used to purchase the Azimut, which cost more than $2.4 million. The invoice does not indicate that the Satullos or Copper Kettle paid sales tax in Florida on the purchase of the Azimut.

{¶ 10} The Azimut was brought to Ohio and Michigan in the summer of 1998. The appellants eventually sold that yacht to a boat dealer in Florida.

{¶ 11} The Tax Commissioner performed an audit of the appellants' purchases and use of the two boats and concluded that the younger Satullo and Copper Kettle owed more than $300,000 in use taxes, penalties, and interest charges. (The elder Satullo had died by the time the Tax Commissioner issued his final determination.)

{¶ 12} The younger Satullo and Copper Kettle appealed the determination to the BTA, which held a hearing on the matter in September 2004. The BTA sided with the Tax Commissioner, finding that "Copper Kettle was the titled owner of the boats, but Mr. Satullo II had both possession and a license to use the boats within the state of Ohio," and therefore both Copper Kettle and the younger Satullo were liable for the payment of use taxes on the boats. The BTA also found insufficient support in the record for the appellants' claims that they had purchased the boats with the intent to resell them. "Copper Kettle was not a dealer for any boat line at the time of purchase and has provided no tangible evidence of proposed dealership agreements or sub-dealership agreements with any manufacturer," the BTA explained, and "[t]he purchases were not consummated as if the boats were intended to be a part [of] Copper Kettle's inventory."

{¶ 13} The younger Satullo and Copper Kettle have filed this appeal of right from the BTA's decision.

### The Standard of Review

{¶ 14} In reviewing a BTA decision, this court looks to see if that decision was "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783; see R.C. 5717.04. The court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will affirm them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 15} As for the burden of proof, it rests on the taxpayer "to show the manner and extent of the error in the Tax Commissioner's final determination." *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30. The Tax Commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." *Nusseibeh v. Zaino*, 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10. Any claimed exemption from taxation "must be strictly construed," and the taxpayer "must affirmatively establish his or her right" to the exemption. *Campus Bus Serv. v. Zaino*, 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8.

## The Appellants' Compliance with R.C. 5717.04

{¶ 16} Before we address the merits of the case, a procedural wrinkle deserves mention. R.C. 5717.04, which prescribes the way in which appeals may be taken from decisions of the BTA, states as follows:

{¶ 17} "[A]ppeals shall be taken within thirty days after the date of the entry of the decision of the board * * * by the filing by appellant of a notice of appeal with the court to which the appeal is taken and the board. * * * Proof of the filing of such notice with the board shall be filed with the court to which the appeal is being taken. * * * Unless waived, notice of the appeal shall be served upon all appellees by certified mail."

{¶ 18} According to the Tax Commissioner, the appellants' notice of appeal is defective because (1) the proof of filing attached to the appellants' notice of appeal does not show that the notice filed in this court was also filed with the BTA, (2) the proof of filing states that the notice was sent by ordinary mail rather than by certified mail to the Tax Commissioner's counsel, and (3) the appellants failed to file a new proof of filing when they resent the notice to the Tax Commissioner by certified mail.

{¶ 19} The appellants' notice of appeal was timely filed, however, with both this court and the BTA. A copy of that notice was sent to the Tax Commissioner by certified mail, as well as by ordinary mail, within 30 days after the BTA issued its decision.

{¶ 20} In these circumstances, we find no jurisdictional defect that compels dismissal of the appeal. To be sure, the appellants should have indicated in their notice of appeal to this court that they had also timely filed the notice with the BTA. The appellants did provide us, however, with proof of that timely filing with the BTA in response to a show-cause order—see *Satullo v. Wilkins*, 108 Ohio St.3d 1464, 2006-Ohio-594, 842 N.E.2d 536—and we are therefore satisfied that the appellants have complied with R.C. 5717.04. The fact that the original certificate of service filed with this court listed "ordinary U.S. mail" as the method of service on the Tax Commissioner, when in fact the notice of appeal had been sent by both ordinary and certified mail within the 30–day appeal period, is not a jurisdictional defect under the statute. The appellants properly perfected an appeal from the BTA, and we may therefore reach the merits of their claims.

## Ohio's Use Tax

{¶ 21} Under R.C. 5741.02(A)(1), a tax is levied on "the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided." However, if the acquisition of the tangible personal property or services "would be a sale not subject to the [sales] tax

imposed by sections 5739.01 to 5739.31 of the Revised Code," then the use tax described in R.C. Chapter 5741 is likewise not imposed. R.C. 5741.02(C)(2).

### Satullo's Notice of Appeal Filed With the BTA Did Not Specify One of the Alleged Errors That He Now Raises Here

{¶ 22} Satullo contends first that he was not a "consumer" subject to Ohio's use tax. He failed, however, to raise this issue in the notice of appeal that he filed with the BTA from the Tax Commissioner's final determination.

{¶ 23} "For more than 50 years, this court's decisions interpreting the specificity requirement of R.C. 5717.02 have made clear that a notice of appeal filed with the BTA must explicitly and precisely recite the errors contained in the Tax Commissioner's final determination." *Cousino Constr. Co. v. Wilkins,* 108 Ohio St.3d 90, 2006-Ohio-162, 840 N.E.2d 1065, ¶ 41. We have also explained that any alleged errors not specified in the notice of appeal are not reviewable by the BTA or by this court. See, e.g., *Kern v. Tracy* (1995), 72 Ohio St.3d 347, 349, 650 N.E.2d 428 (appellants' failure to mention an R.C. 5739.02(B)(14) exemption claim in their notice of appeal was fatal); *Cleveland Elec. Illum. Co. v. Lindley* (1982), 69 Ohio St.2d 71, 75, 23 O.O.3d 118, 430 N.E.2d 939 ("Under R.C. 5717.02, a notice of appeal does not confer jurisdiction upon the Board of Tax Appeals to resolve an issue, unless that issue is clearly specified in the notice of appeal"); *Lenart v. Lindley* (1980), 61 Ohio St.2d 110, 114, 15 O.O.3d 152, 399 N.E.2d 1222 ("R.C. 5717.02 is a jurisdictional enactment and * * * adherence to the conditions and procedure set forth in the statute is essential"); *Queen City Valves v. Peck* (1954), 161 Ohio St. 579, 583, 53 O.O. 430, 120 N.E.2d 310, quoting Black's Law Dictionary (4th Ed.1951) (R.C. 5717.02 requires the appellant to "specify" any alleged errors, and "specify" means " 'to mention specifically; to state in full and explicit terms; to point out; to tell or state precisely or in detail; to particularize; or to distinguish by words one thing from another' ").

{¶ 24} Under R.C. 5741.02(B), a consumer who stores or uses tangible personal property in this state is liable for use tax unless that tax was paid when the property was purchased. "Consumer" is defined in R.C. 5741.01(F) as "any person who has purchased tangible personal property." Because Satullo did not specify either of those statutory provisions or even mention the word "consumer" in his notice of appeal to the BTA from the Tax Commissioner's final determination, he failed to preserve for review any challenge to his status as a consumer subject to the use tax, and he cannot now raise that issue in this court.

### The Resale Exception Does Not Apply

{¶ 25} The Tax Commissioner and the BTA both found that Satullo and Copper Kettle were subject to Ohio's use tax because they did not purchase the

Sunseeker and Azimut boats with the intent to resell them. That conclusion is supported by probative evidence in the record.

{¶ 26} R.C. 5739.01(E) excludes from the definition of a "retail sale" any sale "in which the purpose of the consumer is to resell the thing transferred or benefit of the service provided, by a person engaging in business, in the form in which the same is, or is to be, received by the person." In other words, when the purchaser's intent in buying goods or services is to resell them to yet another purchaser without changing the goods or services in any way, the original purchase is not considered a "retail sale" and is therefore not subject to sales tax. And under R.C. 5741.02(C)(2), any sale not subject to the sales tax is likewise not subject to the use tax.

{¶ 27} The burden rested on the appellants to prove to the Tax Commissioner and the BTA that the R.C. 5739.01(E) resale exception applied to the purchases of the two yachts. See *Std. Oil Co. v. Peck* (1955), 163 Ohio St. 63, 65, 56 O.O. 56, 125 N.E.2d 342 ("every sale or use of tangible personal property in Ohio is *presumed* to be taxable, and the burden rests on the taxpayer to establish affirmatively its right to the exceptions claimed"). The appellants failed to meet that burden.

{¶ 28} The record contains ample evidence supporting the BTA's factual finding that the appellants did not purchase the boats with the intent to resell them. There were no dealer agreements between the appellants on the one hand and the manufacturers or the sellers of the boats on the other. The paperwork filed by the appellants in Florida, which stated that the Sunseeker was purchased in 1995 with an intent to resell it, was not prepared until 1998 when the appellants traded in the Sunseeker for the Azimut. The appellants did not list the boats on Copper Kettle's personal property tax returns or other business records, and the insurance paperwork suggests that the Sunseeker was intended not for resale but for the Satullos' own personal use. Both boats appear to have been purchased with the Satullos' personal funds rather than with Copper Kettle's corporate funds, and the appellants did not provide the Tax Commissioner with any sales literature suggesting that the boats had been offered for resale. The BTA also found that the private marinas or limited-public-access docks where the boats were stored in Ohio and Michigan were not typical locations where boats would be marketed for sale, and the appellants did not display either the Sunseeker or the Azimut at any boat shows.

{¶ 29} In light of these facts, all of which are supported by the record, the BTA reasonably concluded that the appellants did not purchase the boats with an intent to resell them. To be sure, the appellants offered the testimony of four witnesses who supported their resale-exception claim. But the BTA "has wide discretion to determine the weight given to evidence and the credibility of

witnesses before it." *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (1996), 75 Ohio St.3d 181, 185, 661 N.E.2d 1056.

{¶ 30} The BTA, in rejecting the appellants' resale-exception claim, described their witnesses' testimony as questionable and not persuasive and noted the inconsistency between the evidence that they presented and the evidence gathered from other sources by the Tax Commissioner. We will not second-guess those findings, for it is "not the function of this court to substitute its judgment on factual issues for that of the Board of Tax Appeals." *Citizens Financial Corp. v. Porterfield* (1971), 25 Ohio St.2d 53, 57, 54 O.O.2d 191, 266 N.E.2d 828. If the record contains reliable and probative support for the BTA's determination, "we will affirm." *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483. Even if we "might have weighed the evidence differently from the Board of Tax Appeals if we had been making the original determination," we will not disturb the decision as long as there is evidence that reasonably supports the BTA's conclusion. *Jewel Cos., Inc. v. Porterfield* (1970), 21 Ohio St.2d 97, 99, 50 O.O.2d 238, 255 N.E.2d 630.

{¶ 31} For these reasons, we affirm the BTA's decision that the appellants did not purchase the boats with the intent to resell them, and therefore the R.C. 5739.01(E) resale exception to the sales and use tax does not apply.

### The Transient–Use Exception Does Not Apply

{¶ 32} Appellant Satullo next contends that he is not liable for use taxes on the boats because he was a "transient" user of them. The BTA rejected this claim, as do we.

{¶ 33} R.C. 5741.02(C)(4) provides that the use tax does not apply to the "[t]ransient use of tangible personal property in this state by a nonresident tourist or vacationer, or a non-business use within this state by a nonresident of this state," as long as the property was purchased "outside this state for use outside this state."

{¶ 34} The BTA rejected Satullo's claim that he was a Florida resident, noting that he listed a Solon, Ohio address on insurance paperwork and on a form that he completed for a private marina on Lake Erie. The BTA found, in other words, that Satullo was not "a nonresident" of this state as would be required for him to claim an exemption under R.C. 5741.02(C)(4).

{¶ 35} We will not overturn the BTA's factual finding on this issue. "Where the appellant-taxpayer's assertion of error is basically one concerning a factual determination by the board, this court has been unwilling to disturb such determination if there is any probative evidence in the record to support the board's decision." *Decor Carpet Mills, Inc. v. Lindley* (1980), 64 Ohio St.2d 152, 153, 18 O.O.3d 376, 413 N.E.2d 833. That axiom applies in this case, for

probative evidence in the record supports the BTA's finding concerning Satullo's residence.

{¶ 36} Moreover, evidence in the record also suggests that Satullo cannot rightly claim that the boats were purchased "for use outside this state," as the R.C. 5741.02(C)(4) transient-use exemption requires. According to the testimony of one of the appellants' own witnesses, appellants' goal was to market the boats in Ohio and nearby states. The president of Copper Kettle testified at the BTA hearing that he wanted the company to acquire the Sunseeker because he believed that the company "could be successful in Northeastern Ohio with a high-style line of boats," and he hoped to "pioneer a line of boats in Ohio that was different than what anybody else would have." Whether the boats were purchased for the Satullos' personal use (as the BTA found) or for marketing purposes (as the appellants claimed), the record does not show that the boats were purchased "for use outside this state," and the R.C. 5741.02(C)(4) transient-use exemption therefore does not apply.

### The Assessments Against Both Appellants Were Reasonable and Lawful

{¶ 37} The appellants also challenge the Tax Commissioner's decision to impose use tax on the younger Satullo for purchases allegedly made by Copper Kettle alone. The Tax Commissioner explained in his written final determinations, however, that he does not intend to collect the tax twice. He simply assessed the tax against both Satullo and the corporation because they presented what he described as "alternative and contradictory arguments" about the ownership of the two boats.

{¶ 38} The Tax Commissioner's action—and the BTA's affirmance of it—was not unreasonable or unlawful. The BTA found that although the record "contains conflicting evidence as to who is the actual titled purchaser of the property," Copper Kettle was "the titled owner of the boats," and Satullo "had both possession and a license to use the boats." The use-tax assessments against both of them were therefore proper, according to the BTA.

{¶ 39} That conclusion is supported by the record, as we explained above. Satullo listed himself as the owner of the Sunseeker in 1996 on a registration form for the private marina in Port Clinton, and he used both boats in Ohio. Copper Kettle's vice-president claimed in a letter to the Tax Commissioner's office in 1998 that the company owned the Sunseeker, and its president likewise stated in a 1999 letter to the Tax Commissioner's office that the company owned the Azimut. Probative evidence, in other words, supported the BTA's conclusion that both appellants owed use taxes for the storage or use of the boats in Ohio, and we will not overturn that finding.

{¶ 40} As for the lawfulness of the dual assessment against both Satullo and Copper Kettle, there was nothing improper about the Tax Commissioner's decision to assess the two owners of the property for the same tax. Tax collectors are entitled to impose tax liabilities on multiple persons or entities if the facts and the law support such a finding. See *Gerardo v. Commr. of Internal Revenue* (C.A.3, 1977), 552 F.2d 549, 555, quoting *Stone v. United States* (S.D.N.Y.1975), 405 F.Supp. 642, 649 (the Internal Revenue Service is permitted " 'to assess deficiencies against more than one person for the same tax liability' ").

{¶ 41} As the Tax Commissioner explains in his brief filed with this court, "there is but one use tax liability" for each boat, and therefore if one of the appellants pays, the other has a full defense against any further collection of the tax liability. On the record before us, which contains conflicting evidence about the ownership of the boats, we find nothing unreasonable or unlawful about the Tax Commissioner's decision to assess both appellants for the full amount of the unpaid use taxes, with the caveat that the taxes may be collected just once from the two appellants.

## The Taxable "Price" of the Boats

{¶ 42} The appellants present several other claims, none of which warrants reversal of the BTA's decision.

### The Definition of "Price" in R.C. 5741.01(G)(4) and 5741.01(G)(3)

{¶ 43} The appellants rightly note that under R.C. 5739.025, the amount of sales or use tax owed by a consumer is determined by the "price" of the taxable goods or services, and "price" is defined in R.C. 5741.01(G). Among the definitions of that term in the statute is this provision in R.C. 5741.01(G)(4):

{¶ 44} "In the case of tangible personal property held in this state as inventory for sale or lease, and that is temporarily stored, used, or otherwise consumed in a taxable manner, the price is the value of the temporary use."

{¶ 45} That provision is significant, the appellants claim, because the Sunseeker and the Azimut were only temporarily stored in Ohio during the years covered by the Tax Commissioner's audit. But the BTA did not find that the boats were "held in this state as inventory for sale or lease" as is necessary to trigger the R.C. 5741.01(G)(4) definition of the term "price." Indeed, as discussed above, the BTA expressly rejected the appellants' claim that the boats were purchased with the intent to resell them.

{¶ 46} The BTA's factual findings are supported by probative evidence in the record. Because the BTA reasonably rejected any suggestion that the two boats in question were held in this state as inventory for sale or lease, we find that R.C. 5741.01(G)(4) does not apply in this case.

{¶ 47} The appellants also argue that the BTA should have considered the definition of "price" in R.C. 5741.01(G)(3). That provision, however, applies to "a nonresident business consumer" who temporarily stores, uses, or otherwise consumes tangible personal property "in the conduct of business in this state." The BTA's factual findings do not support the application of that provision in this case. Copper Kettle is an Ohio corporation rather than a "nonresident." As for Satullo himself, he was not a "business" and he did not use the boats "in the conduct of business in this state." The BTA also found that Satullo failed to prove that he lived outside Ohio. For each of these reasons, which are supported by probative evidence in the record, we hold that R.C. 5741.01(G)(3) does not apply in this case.

### The Trade–In Value of the Sunseeker

{¶ 48} The appellants contend that the Tax Commissioner should have reduced the "price" of the Sunseeker for use-tax purposes in accordance with R.C. 5739.01(H)(3) and 5741.01(G)(2). Those provisions explain that when one boat is traded in as part of the consideration for the purchase of another watercraft at a watercraft dealer, the "price" for purposes of the sales and use tax does not include the value of the trade-in. Because the appellants traded in the Sunseeker when they acquired the Azimut, they argue that those statutory provisions should have compelled the Tax Commissioner to subtract the Sunseeker's trade-in value from the taxable "price" of the Azimut.

{¶ 49} The appellants have failed, however, to meet their burden of proof on this issue. The trade-in price reduction applies only if the watercraft dealer was "licensed in accordance with section 1547.543 of the Revised Code." R.C. 5739.01(H)(3). The appellants offered no evidence at the BTA hearing that Richard Bertram, Inc.—the Florida watercraft dealer that sold the Azimut—had obtained an Ohio license under R.C. 1547.543 from the Division of Watercraft at the Ohio Department of Natural Resources. It was the appellants' burden "to show the manner and extent of the error in the Tax Commissioner's final determination." *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30. Absent any proof from them that the seller of the Azimut was licensed under R.C. 1547.543, we hold that R.C. 5739.01(H)(3) does not apply in this case. The appellants have therefore failed to show that the Tax Commissioner erred in his calculation of the taxable price of the Azimut.

### Conclusion

{¶ 50} The BTA acted reasonably and lawfully when it affirmed the Tax Commissioner's use-tax assessments against the appellants. The decision of the BTA is therefore affirmed.

Decision affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

O'DONNELL, J., dissents.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 51} I dissent from the holding against Sandy Satullo II. It is hard to fathom that he will be forced to pay use tax on a boat he never owned. True, he told marina personnel in Port Clinton that he was the owner of the craft, but if we start taxing boaters for boasting, Lake Erie will soon be empty.

---

Wegman, Hessler & Vanderburg, Keith A. Vanderburg, and Angela M. Privitera Lavin, for appellants.

Jim Petro, Attorney General, Robert C. Maier, Senior Deputy Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.