[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, Slip Opinion No. 2014-Ohio-4723.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4723

OLENTANGY LOCAL SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.*

DELAWARE COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, Slip Opinion No. 2014-Ohio-4723.]**

*Taxation of real property—Appraisal—R.C. 5713.04 and former R.C. 5713.03— Recent sale price—Auction sale—Presumptions.*

(No. 2013-1506—Submitted July 8, 2014—Decided October 28, 2014.)

APPEAL from the Board of Tax Appeals, No. 2010-L-2354.

————————————————

**Per Curiam**.

**{¶ 1}** This case turns on the relationship between two statutory provisions governing real property tax assessment, R.C. 5713.04 and former R.C. 5713.03.  During the time at issue in this case, former R.C. 5713.03 established a rebuttable presumption that a sale price is the best evidence of a property's value

for purposes of assessing real property tax.[1]  Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722; *Cummins Prop. Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 13.  Then as now, R.C. 5713.04 expressly stated that a sale price from an auction or a forced sale "shall not be taken as the criterion of [the property's] value."

{¶ 2}   We must now determine whether an auction sale price can ever be regarded as evidence of a property's value and, if so, under what circumstances. Following the reasoning of our decision in *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489 ("*Fenco*"), we hold that R.C. 5713.04, read in conjunction with former R.C. 5713.03, requires the taxing authorities to presume that an auction sale price is not a voluntary, arm's-length transaction.  That presumption may be rebutted, however, by evidence that a particular sale was in fact voluntary and did occur at arm's length.

{¶ 3}   In addition, because the record supports the finding of the Board of Tax Appeals ("BTA") that the auction sale in this case was a voluntary arm's-length transaction, we affirm the BTA's determination of the tax-year-2009 value of the property at issue.

### Facts

### 1. The property

{¶ 4}   This case involves the tax-year-2009 value of parcel No. 319-342-01-015-000.  The property is located at 10041 Wellington Boulevard in Powell, Ohio, and has been improved by a single-family dwelling.

{¶ 5}   In October 2007, a division or affiliate of Countrywide Home Loans acquired the property for $450,000 at a sheriff's sale pursuant to

---

[1] "[W]e must apply the substantive tax law that was in effect during the tax year at issue"—here, 2009.  *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 20, fn. 1.

foreclosure. Countrywide listed the property for sale on the multiple listing service ("MLS") on February 18, 2008, for a price of $479,000 and later reduced the price to $448,900. Months later, Countrywide arranged an auction for the property.

{¶ 6} An auction was held on November 17, 2008, and David Abraham offered the last and highest bid, $414,750. Countrywide accepted Abraham's bid, and closing occurred on December 17, 2008.

{¶ 7} After closing, Abraham transferred the property to TaDa Investments, L.L.C., a real estate holding company owned by Abraham and his wife.

### 2. Valuation and board of revision proceedings

{¶ 8} The Delaware County auditor valued the property at $826,100 for tax year 2009.

{¶ 9} TaDa filed a complaint with the Delaware County Board of Revision, seeking a decrease to $414,750, in keeping with the property's December 2008 sale price. The Board of Education of Olentangy Local Schools filed a countercomplaint, seeking to maintain the auditor's initial valuation.

{¶ 10} TaDa moved for an order based solely on its complaint, arguing that it had established a recent arm's-length sale and that no hearing was necessary. According to TaDa, "[t]he fact that the subject property was purchased through an auction has no effect on its status as an arm's-length transaction" because it was not a forced sale. In response, the school board argued that it was entitled to cross-examine TaDa's witnesses and inspect its evidence at a hearing.

{¶ 11} On August 24, 2010, the board of revision proceeded with a hearing. At the hearing, TaDa presented Abraham's testimony about his purchase of the property. Abraham stated that he had no prior relationship with Countrywide or the auctioneer, Williams & Williams. He had learned about the

auction when his wife saw advertisements on the Internet and in the newspaper several weeks before the auction date.

{¶ 12} According to Abraham, interested buyers were permitted to inspect the property both before the auction date and on the day of the auction before bidding began. He testified that 75 to 85 people attended the auction in person and that 50 additional people participated online. Several people bid on the property before Abraham offered the last and highest bid—$414,750. Countrywide, which had retained the right to reject the highest bid, accepted Abraham's offer, and closing occurred on December 17, 2008.

{¶ 13} The school board did not present any witnesses at the board of revision hearing, but it did cross-examine Abraham. The school board inquired whether Countrywide had acquired the property in a foreclosure sale and whether Abraham had an affiliation with Countrywide. The school board then asked Abraham to submit a copy of the settlement and the property's MLS listing.

{¶ 14} At the close of the hearing, the board of revision reiterated the request for additional documentation. A week later, TaDa submitted a copy of the property's original MLS listing, a copy of the settlement contract between Abraham and Countrywide, and a "Real Estate Purchase Addendum." The MLS listing indicated that Countrywide had initially listed the property on February 18, 2008, for $479,000 but later reduced the list price to $448,900. It also stated that the property was being sold by a bank and was scheduled for auction. The contract confirmed Countrywide's authority to reject Abraham's bid. And the addendum, signed by Abraham on November 17, 2008, stated that Countrywide had "acquired the property through foreclosure, deed-in-lieu of foreclosure, or similar process."

{¶ 15} On September 7, 2010, the board of revision issued a decision reducing the auditor's tax-year-2009 valuation to $414,750.

3. BTA proceedings

{¶ 16} The school board appealed to the BTA under R.C. 5717.01. The parties waived a hearing, submitting only briefs and the statutory transcript from the board of revision proceedings.

{¶ 17} In its brief, the school board argued that the board of revision had erred by relying on the property's 2008 sale price because a foreclosure auction sale is not evidence of value under R.C. 5713.04 and former R.C. 5713.03. The school board also argued that Countrywide was not a typically motivated seller, because it had acquired the property as a lender, through foreclosure or a similar process.

{¶ 18} In response, TaDa observed that the BTA frequently recognizes auctions as arm's-length transactions. TaDa further argued that the circumstances of this auction were unlike those in *Fenco*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, in which this court held that the sale price at a foreclosure auction by the U.S. Department of Housing and Urban Development ("HUD") was not evidence of value.

{¶ 19} The BTA affirmed. In its opinion, the BTA distinguished between forced and voluntary auctions, reasoning that a sale price at auction is the best evidence of a property's value as long as the sale satisfies the requirements for an arm's-length transaction. "[B]ased upon the record" before it, the BTA found that "all elements of an arm's- length sale were indeed present" for the 2008 sale. BTA No. 2010-L-2354, 2013 WL 6833204 at *2. The BTA then concluded, "As there is insufficient evidence to indicate that the sale * * * was not an arm's-length transaction, we find that the sale price of $414,750 is the best evidence of the true value of the property." *Id.*

{¶ 20} The school board appealed the BTA's decision, raising seven assignments of error and asserting two propositions of law.

**Analysis**

1. Standard of review

**{¶ 21}** We review BTA decisions only to determine whether they are "reasonable and lawful." R.C. 5717.04. The court will defer to the BTA's factual findings, including determinations of a property's value, as long as they are supported by "reliable and probative" evidence in the record. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14; *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), at syllabus. The BTA's legal determinations, however, are subject to de novo review. *Crown Communication, Inc. v. Testa*, 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 16.

**{¶ 22}** Here, we must ultimately determine whether the record supports the BTA's factual finding that the 2008 auction sale was a voluntary arm's-length transaction. In order to resolve that issue, however, we must first resolve two questions of law: (1) whether the price paid for real property at an auction sale can ever be considered as evidence of the property's value and (2), if so, which party bears the burden to prove that the auction sale was (or was not) an arm's-length transaction between typically motivated parties.

2. Auction sale prices may, under certain circumstances, be

regarded as evidence of a property's value

**{¶ 23}** In its first proposition of law, the school board argues that R.C. 5713.04 categorically prohibits reliance on an auction sale price to determine a property's value. For the reasons explained below, we disagree.

a. *R.C. 5713.04 and former R.C. 5713.03*

*direct the auditor's valuation of real property*

**{¶ 24}** R.C. 5713.04 and former R.C. 5713.03 both address a county auditor's valuation of real property for tax purposes. First, former R.C. 5713.03 requires the auditor to determine "the true value of each separate tract, lot, or

6

parcel of real property and of buildings, structures, and improvements located thereon." Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722. If a "tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes." *Id.* In other words, a recent sale price for a property "is deemed to be the value of the property." *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 13.

{¶ 25} To implement former R.C. 5713.03, this court established " 'a rebuttable presumption * * * that [a] sale has met all the requirements that characterize true value.' " *Id.* at ¶ 41, quoting *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327, 677 N.E.2d 1197 (1997). This presumption can be rebutted only by "challenging whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale." *Cummins* at ¶ 13.

{¶ 26} R.C. 5713.04 likewise states that "[e]ach separate parcel of real property shall be valued at its taxable value." But unlike former R.C. 5713.03, this provision includes a separate admonition that "[t]he price for which such real property would sell at auction or forced sale *shall not* be taken as the criterion of its value." (Emphasis added.) *Id.* This case turns on the significance of that admonition.

b. *R.C. 5713.04 applies to both voluntary and involuntary auctions*

{¶ 27} At the outset, we must consider the meaning of "auction" in R.C. 5713.04. As explained below, we agree with the school board's broad interpretation of the term to include both voluntary and involuntary auctions.

{¶ 28} In two previous cases, we have mentioned the issue but had no need to decide it. *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23, 546 N.E.2d 932 (1989); *Fenco*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489.

**{¶ 29}** This case finally presents an opportunity for the court to determine the meaning of "auction" in this context. The Revised Code offers little guidance in this exercise: neither R.C. 5713.04 nor any other section of R.C. Chapter 5713 defines or in any way limits the term. The only clue R.C. 5713.04 offers is that, whatever its definition, "auction" must include some transactions that are not forced sales. *See* R.C. 5713.04 (prohibiting reliance on prices from sales "at auction *or* forced sale" [emphasis added]). As the school board observes, an "involuntary" auction—such as a foreclosure-sale auction—would generally qualify as a "forced sale." *See Fenco* at ¶ 25. This suggests that the General Assembly intended the term "auction" to reach more broadly.

**{¶ 30}** In the absence of additional statutory guidance, however, we must "look to the usual and ordinary definition of the word." *Brecksville v. Cook*, 75 Ohio St.3d 53, 56, 661 N.E.2d 706 (1996); *see also* R.C. 1.42. The word "auction" has a commonly recognized plain meaning. Both *Webster's Third New International Dictionary* 142 (1993) and *Black's Law Dictionary* 149 (9th Ed.2009) define "auction" as "[a] public sale of property to the highest bidder." In light of this definition, we conclude that voluntary auctions are covered by R.C. 5713.04.[2]

c. *R.C. 5713.04 applies to consummated transactions*

**{¶ 31}** TaDa contends that regardless of how "auction" is defined, R.C. 5713.04 does not apply to any *consummated* sales, including sales at an auction. We disagree.

---

[2] TaDa argues that—voluntary or not—this transaction "may not even qualify as an 'auction,' " because Countrywide retained the right to reject the highest bid. In support, TaDa cites definitions in R.C. 4707.01. But those definitions are for terms as used in R.C. Chapter 4707 and are irrelevant to the meaning of terms used in R.C. Chapter 5713. Regardless, we cannot ignore the fact that TaDa itself consistently described this transaction as an "auction" before both the board of revision and the BTA, or that it continues to do so repeatedly in its briefing to this court. We therefore reject this argument.

**{¶ 32}** TaDa's argument derives from the General Assembly's use of different tenses in former R.C. 5713.03 and R.C. 5713.04. Former R.C. 5713.03 refers to prices for property that "*has been* the subject of" a recent arm's-length sale. (Emphasis added.) By contrast, R.C. 5713.04 refers to prices for which property "*would* sell." (Emphasis added.) Based on this distinction, TaDa concludes that any price from a consummated sale that satisfies the criteria in former R.C. 5713.03—including auction sales and, presumably, forced sales—is the best evidence of a property's value. In other words, TaDa reads R.C. 5713.04 to apply only when a consummated sale has not occurred; it prohibits an appraiser from relying upon the hypothetical price for which a property "would sell at an auction or forced sale" as evidence of the property's value.

**{¶ 33}** This argument is foreclosed by our decisions (as well as BTA decisions), which have applied R.C. 5713.04 to analyze already consummated transactions. *Fenco*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, at ¶ 25-26 (foreclosure sale); *Dublin Senior Community. L.P. v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 455, 687 N.E.2d 426 (1997) (sheriff's sale); *Litchney v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2013-3421, 2014 WL 687344 (sheriff's sale); *Leach v. Hamilton Cty. Bd. of Revision*, BTA No. 96-M-1651, 1998 WL 274221 (sheriff's sale); *Concept Invest. Group LLC v. Franklin Cty. Bd. of Revision*, BTA No. 2005-T-1267, 2006 WL 3388065 (public auction). TaDa cannot square its present theory with those cases.

**{¶ 34}** We therefore reject TaDa's argument as contrary to precedent; R.C. 5713.04 does apply to consummated transactions.

### d. *R.C. 5713.04 is not an absolute bar*

**{¶ 35}** In light of the above analysis, we must now decide whether R.C. 5713.04 categorically prohibits reliance on an auction sale price as evidence of a property's value, even when the sale satisfies former R.C. 5713.03's requirements for a recent, arm's-length transaction. Because R.C. 5713.04 addresses both

auctions and forced sales, the answer to this question is necessarily informed by our 2010 decision analyzing whether R.C. 5713.04 absolutely bars consideration of the sale price from a foreclosure auction. *Fenco*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489.

{¶ 36} In *Fenco*, we analyzed the significance of a HUD foreclosure sale under R.C. 5713.04 and former R.C. 5713.03. We explained that "[t]he reference to 'forced sale' " in R.C. 5713.04 "codifies the basic proposition that a sale must be voluntary from the standpoint of both seller and buyer in order to qualify as an arm's-length transaction." *Id.* ¶ 19. A foreclosure sale is not at arm's length "for purposes of [former] R.C. 5713.03 because the motivations of the parties to the sale, particularly the seller, do not qualify as typical of the motivations of other persons in the marketplace." *Id*. at ¶ 22; *see also* ¶ 3 (such a sale usually "occurs under the compulsion that the property be liquidated for the benefit of creditors"). Ultimately, *Fenco* held that the sale in question "constituted a foreclosure sale, which is presumptively not at arm's length and which has not been shown to be voluntary." *Id*. ¶ 34.

{¶ 37} In short, as interpreted by *Fenco*, R.C. 5713.04 codifies a presumption that foreclosure sales are not at arm's length. But it might be possible to introduce evidence showing that that a particular foreclosure sale is voluntary. Indeed, in *Fenco,* three members of this court would have affirmed the BTA's determination that the particular sale at issue in that case was a voluntary, arm's-length sale. *Id*. at ¶ 39 (Pfeifer, J., dissenting). Thus, R.C. 5713.04 does not categorically prohibit reliance on the price from a foreclosure sale as evidence of value.

{¶ 38} The standard we applied to foreclosure sales in *Fenco* also applies to auction sales for two reasons. First, R.C. 5713.04 does not differentiate between prices generated by auctions and prices in forced sales—it refers to prices from an "auction *or* forced sale." (Emphasis added.)

{¶ 39} Furthermore, there is even greater reason to let parties introduce evidence that a sale was voluntary and at arm's length in the context of an auction sale than a foreclosure. In the latter situation, a seller is by definition unlikely to be typically motivated—the sale, by definition, is "forced." By contrast, the circumstances of auctions vary significantly, increasing the likelihood that a particular transaction may satisfy the criteria for an arm's-length sale. Accordingly, as the BTA has repeatedly recognized, in spite of R.C. 5713.04's proscription, "the sale prices of parcels sold at auction are nevertheless the best evidence of value when all of the elements of an arm's-length transaction are present." *Concept Invest. Group*, 2006 WL 3388065, at *3; *see also Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, BTA No. 2007-A-1196, 2009 WL 1999014, at *4 (citing cases); *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 2002-V-1732, 2004 WL 767069 at *5; *Leach*, 1998 WL 274221, at *5.

{¶ 40} For these reasons, we reject the school board's first proposition of law and hold that R.C. 5713.04 establishes a presumption that a sale price from an auction is not evidence of a property's value. However, that presumption may be rebutted by evidence showing that the sale occurred at arm's length between typically motivated parties. *See Fenco*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, at ¶ 34.

### 3. The burden to prove that an auction sale is evidence of value falls on the proponent of the sale price

{¶ 41} The school board's second proposition of law requires us to determine which party bears the burden to prove that an auction sale price is (or is not) the best evidence of a property's value. The school board argues that the BTA erred by not requiring the proponent of the sale price, TaDa, to prove that the transaction was voluntary and at arm's length. In addition, the school board claims that the record does not support the BTA's finding that "all elements of an

arm's-length sale were indeed present" here. BTA No. 2010-L-2354, 2013 WL 6833204 at *2.

a. *The proponent of a sale price bears a heavier burden*

*when the sale occurred at an auction*

**{¶ 42}** The purpose of former R.C. 5713.03 was "to promote the use of the recent sale to determine the value of the property and thereby minimize the need for other evidence when a recent sale price is available." *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 41. Ordinarily, then, "[t]he initial burden on a party presenting evidence of a sale is not a heavy one, where the sale on its face appears to be recent and at arm's length." *Id.* Once evidence of a sale has been presented, the burden then falls on a party opposing the sale price to rebut the sale's recency or its arm's-length character. *Id.* at ¶ 13. In short, a sale price is accepted as a property's value unless the opponent of the price can establish that there is "reason to disregard the sale price as an indicator of value." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 45, 2008-Ohio-1588, 885 N.E.2d 934, ¶ 16.

**{¶ 43}** By contrast, when the underlying transaction is an auction or a forced sale, the proponent of the sale price bears a heavier burden. As explained above, R.C. 5713.04 reverses the typical presumption that a sale price is the best evidence of a property's value when the underlying transaction was an auction or a forced sale. Accordingly, we likewise adjust the typical burdens of proof with regard to sale prices. Namely, the opponent of a sale price has a very light burden to establish that a transaction was on its face an auction or a forced sale. Once that threshold is crossed, then the proponent of the sale price bears the burden to prove that the sale was nevertheless an arm's-length transaction between typically motivated parties and should therefore be regarded as the best evidence of the property's value.

b. *The BTA reasonably found that this auction sale*
*was a voluntary, arm's-length transaction*

**{¶ 44}** The BTA found that the November 2008 auction sale was a voluntary, arm's-length transaction. As explained above, we afford great deference to the BTA's factual determinations, reversing only if a finding is not supported by reliable and probative record evidence. *Satullo*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, at ¶ 14.

**{¶ 45}** Initially, the school board urges us to reject the BTA's factual determination because the BTA erroneously required the school board to prove that the auction sale was not voluntary or at arm's length, rather than requiring TaDa to prove that it was. The penultimate paragraph of the BTA's opinion explains that the auction sale price was the best evidence of value because "there [was] insufficient evidence that the sale * * * *was not* an arm's-length transaction." (Emphasis added.) BTA No. 2010-L-2354, 2013 WL 6833204 at *2. This suggests that the BTA did improperly require the school board to offer evidence to prove that the auction sale was not an arm's-length transaction.

**{¶ 46}** In the sentence immediately preceding this statement, however, the BTA expressly found that "all elements of an arm's-length sale were indeed present" in this transaction. *Id.* Thus, the BTA did not merely presume that the transaction was at arm's length because the school board failed to prove otherwise. We will therefore proceed to evaluate whether the record supports the BTA's factual determination about the nature of this transaction.

**{¶ 47}** Three factors are relevant to deciding whether a transaction occurred at arm's length: whether the sale was "voluntary; *i.e.*, without compulsion or duress," whether the sale "[took] place in an open market," and whether the buyer and seller "act[ed] in their own self interest." *Walters*, 47 Ohio St.3d at 25, 546 N.E.2d 932. Here, the school board says that the record does not

indicate that Countrywide acted voluntarily or that it was a typically motivated seller.

{¶ 48} Countrywide acquired the property for $450,000 in October 2007 "through foreclosure, deed-in-lieu of foreclosure, or similar process." In February 2008, Countrywide listed the property on the MLS at a price of $479,000. Later, Countrywide reduced the list price to $448,900. In November 2008, Countrywide sold the property at auction. It publicized the auction weeks ahead of time and gave interested bidders an opportunity to inspect the property before the auction date. Approximately 75 to 85 people attended the auction in person, and an additional 50 potential bidders participated online. Ultimately, Abraham was the highest bidder. Countrywide had retained the right to reject the highest bid, but it accepted Abraham's bid of $417,500.

{¶ 49} As we have previously acknowledged, sellers in foreclosure sales are usually not typically motivated or acting voluntarily. *Fenco*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, at ¶ 22; *see also* ¶ 29 (explaining that HUD did not act voluntarily when it sought to divest itself of property for at least the amount of its initial guaranty). Foreclosure sales generally "reflect a strong impetus to liquidate the property in order to obtain cash to satisfy one or more creditors." *Id.* at ¶ 21.

{¶ 50} However, we have also recognized that "a more remote connection between the foreclosure and the sale" may exist in some cases. *Id.* at ¶ 30. As a result, "[u]nder some circumstances where a bank acquires distressed property, the bank's subsequent sale of the property may be considered an arm's-length transaction." *Kahoe v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 99188, 2013-Ohio-2097, ¶ 15. *Accord Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 134 Ohio St.3d 529, 2012-Ohio-5680, 983 N.E.2d 1285, ¶ 31 (upholding the BTA's factual determination that a short sale was

voluntary even though a short sale "naturally raises the inference of distress and duress").

{¶ 51} The record here suggests a more remote connection between the property's foreclosure and TaDa's acquisition of the property than existed in *Fenco*, and it further contains additional indicia that Countrywide—unlike HUD in *Fenco*—acted voluntarily, as a typically motivated seller. The MLS listing confirms that Countrywide listed the property on the open market for nine months before the auction. In addition, Abraham's testimony indicates that the auction was publicly advertised for a significant period of time, it was well attended, and there were multiple bidders for the property. The highest bid was 92 percent of the property's final MLS list price.[3] Countrywide accepted this bid, although it had retained the right to reject it. The presence of these "open-market elements definitely militates in favor of finding a transaction to have been at arm's length." *N. Royalton School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955, ¶ 30.

{¶ 52} On this record, the BTA could reasonably have concluded that Countrywide acted under duress and was not a typically motivated seller. But the record also contains sufficient evidence to support the BTA's contrary conclusion. As a result, we must defer to the BTA's finding that this particular auction sale was voluntary and occurred at arm's length. *See Satullo*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, at ¶ 14.

### Conclusion

{¶ 53} For the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

---

[3] TaDa also argues that this reduced price was reasonable because the sale occurred shortly after the housing market crash of 2008. But the record does not include any evidence about the crash, and neither the board of revision nor the BTA discussed the housing crash below. Accordingly, we cannot consider this information. *See* R.C. 5715.19.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Rich & Gillis Law Group, L.L.C., and Mark H. Gillis, for appellant.

Corsaro & Associates Co., L.P.A., and Christian M. Bates, for appellee TaDa Investments, L.L.C.

Carol O'Brien, Delaware County Prosecuting Attorney, and Mark W. Fowler, Assistant Prosecuting Attorney, for appellees Delaware County Auditor and Board of Revision.