[Cite as *Green Local Schools Bd. of Edn. v. Manolakis*, 2019-Ohio-3250.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

GREEN LOCAL SCHOOLS BOARD OF
EDUCATION

     Appellee

    and

SUMMIT COUNTY BOARD OF
REVISION

    Appellee

    v.

STAN MANOLAKIS, et al.

    Appellants

C.A. No.     29196


APPEAL FROM JUDGMENT
ENTERED IN THE
OHIO BOARD OF TAX APPEALS
COUNTY OF SUMMIT, OHIO
CASE No.    2017-1706

DECISION AND JOURNAL ENTRY

Dated: August 14, 2019

CARR, Judge.

{¶1} Appellants Stan and Tiffany Manolakis appeal from the decision of the Ohio Board of Tax appeals ("the BTA"). This Court affirms.

I.

{¶2} At the end of 2015, Mr. and Mrs. Manolakis purchased a home on Arlington Road in North Canton via an online auction. They paid $800,000 plus additional fees for a total of $836,299.00. The auditor assigned the property a value of $1,498,350 for 2016.

{¶3} In February 2017, Mr. and Mrs. Manolakis filed a complaint against the valuation of real property with the Summit County Board of Revision ("the BOR") seeking a decrease in

value to $800,000 based upon their recent purchase. Appellee Green Local School District Board of Education ("Green") filed a counter complaint seeking to maintain the value assigned by the auditor.

{¶4} The matter proceeded to a hearing before the BOR at which Mr. Manolakis testified. The BOR concluded that a decrease in valuation was warranted and valued the property at $836,300 for the 2016 tax year.

{¶5} Green appealed to the BTA arguing that the auditor's value should be reinstated because Mr. and Mrs. Manolakis failed to meet their burden in the BOR to demonstrate that the sale was an arm's-length transaction. Absent such evidence, Green argued that the sales price could not be considered the best evidence of value. The parties waived a hearing. While the parties attached documents to their briefs in the BTA, the BTA refused to consider them as the parties had "waiv[ed] the opportunity to supplement the record with new evidence at the [BTA] hearing."

{¶6} The BTA concluded that Mr. and Mrs. Manolakis failed to demonstrate that their purchase of the property for $836,299 was an arm's-length transaction. Ultimately, the BTA concluded that "the evidence submitted at the BOR hearing was insufficient, and, therefore, the BOR's decision to reduce the subject property's value to reflect the auction sale price is unsupported." Further, "[b]ecause there [wa]s no other evidence of value contained in the record," the BTA was "constrained to reinstate the subject property's initially assessed value."

{¶7} Mr. and Mrs. Manolakis have appealed, raising four assignments of error for our review. They will be addressed together to facilitate the discussion of the relevant issues.

II.

**ASSIGNMENT OF ERROR I**

IT WAS UNREASONABLE OR UNLAWFUL FOR THE OHIO BOARD OF TAX APPEALS (BTA) TO REVERSE THE SUMMIT COUNTY BOARD OF REVISION (BOR) (APPENDIX A) DETERMINATION THAT THE FAIR MARKET VALUE OF THE SUBJECT PROPERTY IS $836,300 AS OF THE STATUTORY VALUATION DATE OF JANUARY 1, 2016 WHEN ALL OF THE EVIDENCE PROVES THAT IS THE TRUE VALUE OF THE SUBJECT PROPERTY, INCLUDING THAT WAS THE PRICE WHICH STAN AND TIFFANY MANOLAKIS (MANOLAKIS) PAID FOR THE PROPERTY LESS THAN TWO MONTHS BEFORE THE STATUTORY VALUATION DATE AT A PUBLIC AUCTION SALE OF THE SUBJECT PROPERTY WHICH WAS A VOLUNTARY SALE AT ARM'S LENGTH AND NOT A FORCED OR FORECLOSURE SALE OF THE PROPERTY.

**ASSIGNMENT OF ERROR II**

IT WAS UNREASONABLE OR UNLAWFUL FOR THE BTA TO EFFECTIVELY SHIFT THE BURDEN OF PROOF TO MANOLAKIS DURING THE PROCEEDINGS BEFORE THE BTA WHEN MANOLAKIS WAS NOT THE APPELLANT BEFORE THE BTA.

**ASSIGNMENT OF ERROR III**

ASSUMING THAT THE BURDEN OF PROOF ON APPEAL TO THE BTA HAD TO BE BORNE BY MANOLAKIS (WHICH IS DENIED), IT WAS UNREASONABLE OR UNLAWFUL TO FIND THAT MANOLAKIS DID NOT MEET THAT BURDEN OF PROOF.

**ASSIGNMENT OF ERROR IV**

IT WAS UNREASONABLE OR UNLAWFUL FOR THE BTA TO FIND THAT THE GREEN LOCAL SCHOOLS BOARD OF EDUCATION (GREEN) CARRIED ITS BURDEN OF PROOF AS APPELLANT BEFORE THE BTA WHEN GREEN OFFERED NO COMPETENT AND PROBATIVE EVIDENCE BEFORE EITHER THE BTA OR THE SUMMIT COUNTY BOR TO SUPPORT THE $1,498,350 VALUATION IT WAS ADVOCATING.

{¶8} Mr. and Mrs. Manolakis in their four assignments of error challenge the BTA's decision to reverse the ruling of the BOR and reinstate the value assigned by the auditor. They argue in their first assignment of error that the evidence supports the BOR's determination of value. In their second assignment of error, they assert that the BTA improperly shifted the

burden of proof to them. Mr. and Mrs. Manolakis allege in their third assignment of error that, assuming it was proper to shift the burden to them, they met their burden. Finally, in their fourth assignment of error, they argue that Green failed to meet its burden to establish the $1,498,350 valuation.

{¶9} "We review BTA decisions only to determine whether they are 'reasonable and lawful.' R.C. 5717.04. The court will defer to the BTA's factual findings, including determinations of a property's value, as long as they are supported by 'reliable and probative' evidence in the record." *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, ¶ 21. "The BTA's legal determinations, however, are subject to de novo review." *Id.*

{¶10} R.C. 5713.03 provides in relevant part that, "[i]n determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor may consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes." Nonetheless, R.C. 5713.04 states in pertinent part that "[t]he price for which such real property would sell at auction or forced sale shall not be taken as the criterion of its value." The Supreme Court of Ohio has determined that the word "auction" in R.C. 5713.04 includes both voluntary and involuntary auctions. *Olentangy Local Schools Bd. of Edn.* at ¶ 27. "*Olentangy Local Schools* [*Bd. of Edn.*] made clear for the first time that all auction sales give rise to a presumption against using the sale price as the property's value, subject to rebuttal if the proponent proves the voluntary and arm's-length character of the sale." *Julia Realty, Ltd. v. Cuyahoga Cty. Bd. of Revision*, 153 Ohio St.3d 262, 2018-Ohio-2415, ¶ 16. Thus, "the sale prices of parcels sold at auction are nevertheless the

best evidence of value when all of the elements of an arm's-length transaction are present." *Olentangy Local Schools Bd. of Edn.* at ¶ 39.

{¶11} Under such circumstances, "the opponent of a sale price has a very light burden to establish that a transaction was on its face an auction or a forced sale. Once that threshold is crossed, then the proponent of the sale price bears the burden to prove that the sale was nevertheless an arm's-length transaction between typically motivated parties and should therefore be regarded as the best evidence of the property's value." *Id.* at ¶ 43. "Whether a transaction occurred at arm's length depends on whether the sale was voluntary, whether it took place on the open market, and whether the parties acted in their own self-interest." *North Canton City School Dist. Bd. of Edn. v. Stark Cty. Bd. of Revision*, 152 Ohio St.3d 292, 2018-Ohio-1, ¶ 17.

{¶12} As the appellant before the BTA, Green "bore the burden to prove its right to an increase in the value determined by the BOR." *Id.* at ¶ 15. To do so, Green argued in the BTA that the evidence was insufficient to establish that the transaction was at arm's length. Given the foregoing, we cannot say that the BTA's reference to Mr. and Mrs. Manolakis having a burden was improper. The BTA was reviewing the BOR decision and it was Green's argument that Mr. and Mrs. Manolakis failed to meet their burden in the BOR. *See Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 152 Ohio St.3d 331, 2017-Ohio-8843, ¶ 9 ("The BOE had the burden of proof as the appellant before the BTA, and sought to meet its burden by attacking the competence and probative value of the evidence Columbus Pike had presented to the BOR. The BOE thus argued that Columbus Pike, as the party seeking to decrease the auditor's valuation, did not meet its burden to prove a lower value to the BOR. Indeed, if Columbus Pike had failed to meet its burden with competent and probative evidence at the BOR, the BTA was

required to reverse the BOR's reduction in value. In assessing Columbus Pike's evidence, the BTA could not defer to the BOR's factual findings; it had to independently weigh and evaluate all evidence properly before it.") (Internal citations and quotations omitted.) In their brief, Mr. and Mrs. Manolakis acknowledge that they had the burden of proof at the BOR.

**{¶13}** At the hearing before the BOR, Mr. Manolakis testified that approximately two years prior to his and his wife's purchase of the property, it had been listed for sale but did not sell. In the summer of 2015, the property went up for Sheriff's sale but Mr. Manolakis did not make it to the Sheriff's sale. The record reflects that the property sold for $800,000, which Mr. Manolakis testified was the minimum bid at the sheriff's sale. Mr. Manolakis testified that he thought he heard that the bank had bought the property at the sheriff's sale.

**{¶14}** Sometime after, Mr. Manolakis and his wife noticed a Hubzu sign in the front yard of the property. When they returned home, they looked at the Hubzu online auction website and saw the property posted on the website. Mr. Manolakis had never been on the website before that time. They noticed that the property was going up for auction in about a week's time or less and so took the steps necessary to become a qualified bidder. Mr. Manolakis testified that the auction did not allow participants to bid against one another, and instead, participants had to submit their final and best offer. Mr. Manolakis and his wife submitted a bid of $800,000. The offer was accepted. Mr. Manolakis testified that the seller did not have to accept the offer but documents detailing the auction process were not admitted into evidence. Mr. Manolakis believed that he and his wife were the highest bidders. At the time of bidding, he did not know whether they were the only bidder; however, he later came to learn that they may have been the only bidder. Mr. Manolakis was unaware of what efforts were made to sell the property between the sheriff's sale and the auction.

{¶15} A copy of the purchase agreement was submitted as an exhibit. The purchase agreement lists Ocwen Loan Servicing, LLC as the seller; however, the property card, also in the record, lists "Wells Fargo Bank Trustee" as the grantor and describes the sale as "Mortgage/Lender[.]" Mr. Manolakis testified that neither he nor his wife had any relationship to Ocwen Loan Servicing, LLC nor did they know anyone at the company. Mr. Manolakis maintained over objection that the transaction was an arm's-length transaction, was voluntary, and that the price they paid was an accurate reflection of the value of the property. To Mr. Manolakis' knowledge neither side was compelled to enter into the transaction.

{¶16} The purchase price in the purchase agreement is stated as $800,000, but after fees were added, the total paid by Mr. and Mrs. Manolakis for the property was $836,299. The purchase agreement also lists a listing broker and a selling broker or buyer's agent.

{¶17} Mr. Manolakis and his wife were not able to see the property before the sale, but when they did see it Mr. Manolakis was pleasantly surprised to find that it was in move-in condition. Later, in August 2016, Mr. Manolakis listed the property for sale for $1,895,00 and dropped the price to $1,750,00, but did not get any offers on the property. At the time of the BOR hearing, the property was not listed for sale.

{¶18} While an exhibit of an MLS listing of the property was presented at the hearing over objection, Mr. Manolakis testified that he had not seen that listing before he and his wife purchased the property.[1] The listing was printed the day of the BOR hearing. The listing indicates the list price of the property was $853,000 and that the property sold for $800,000 with a closing date of November 2015. Mr. Manolakis did not know whether the property was

---

[1] Green argues that this evidence should not be considered as it is hearsay. However, we note that "the Rules of Evidence do not strictly apply in administrative tax proceedings[.]" *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, ¶ 15.

actually ever listed at $853,000. The listing does not indicate when it was first posted or even whether it was posted prior to the sale.

{¶19} On appeal, Mr. and Mrs. Manolakis additionally point to the purchase agreement in support of their argument that the sale was an arm's-length transaction. They assert that the "contract documents make it clear that the seller was free to exit the transaction at any time if someone was going to pay more."

{¶20} The first page of the contract states "[u]ntil the Seller receives the Agreement, executed by you, along with a photocopy of the Earnest Money funds, and signs and returns to you a copy of the executed Agreement, there will be no binding contract between the parties, and the Seller will have no obligation to move forward with the contemplated sale. Therefore, until this happens, the Seller will continue to market the Property, negotiate and accept other offers on the Property. Further, at all times, even after there is a binding contract, the Seller reserves the right to continue to market the Property and accept backup offers on the Property." Another provision provides that "Seller reserves the right to continue to offer the Property for sale to others after Buyer's delivery of this Agreement and/or Seller's acceptance of the Buyer's offer and accept backup offers at Seller's sole discretion."

{¶21} However, even assuming this language means what Mr. and Mrs. Manolakis believe it does, they did not demonstrate that the property was in fact marketed after their offer was accepted or that any backup offers were accepted. Instead, Mr. Manolakis testified that he had learned that their bid may have been the only bid.

{¶22} The Supreme Court has concluded the presence of certain "open-market elements definitely militates in favor of finding a transaction to have been at arm's length." *See*

*Olentangy Local Schools Bd. of Edn.*, 141 Ohio St.3d 243, 2014-Ohio-4723, at ¶ 51. In

*Olentangy Local Schools Bd. of Edn.*, the facts were such that

> [t]he MLS listing confirm[ed] that Countrywide listed the property on the open market for nine months before the auction. In addition, [the] testimony indicate[d] that the auction was publicly advertised for a significant period of time, it was well attended, and there were multiple bidders for the property. The highest bid was 92 percent of the property's final MLS list price. Countrywide accepted this bid, although it had retained the right to reject it.

*Id.*

{¶23} Notwithstanding the presence of those facts, the Supreme Court concluded that "the BTA could reasonably have concluded that Countrywide acted under duress and was not a typically motivated seller. But the record also contains sufficient evidence to support the BTA's contrary conclusion." *Id.* at ¶ 52.

{¶24} While Mr. Manolakis testified in a conclusory fashion that the sale was at arm's length, voluntary, and neither side was forced to enter the transaction, the BTA could have reasonably found that evidence insufficient given the lack of evidence to support those claims. It is true that Mr. and Mrs. Manolakis presented an MLS listing of the property to support their position. However, that listing was printed on the day of the BOR hearing and there was no evidence as to when it was created or even whether that listing existed at the time the property was up for auction. Instead, the listing indicates the property was sold for $800,000, the sale closed in November 2015, and the property was not available for auction.

{¶25} From Mr. Manolakis' testimony, all that can be said for sure is that about a week before the auction, there was a sign in the front yard of the property and at that time the property was listed on Hubzu. It is not clear what, if any, other marketing efforts were done. It is also unclear whether there was a minimum bid for the auction. After the auction, Mr. Manolakis learned he may have been the only bidder.

{¶26} Given the record before us, we conclude that the decision of the BTA determining that Mr. and Mrs. Manolakis failed to sufficiently demonstrate that the online auction was an arm's-length transaction was reasonable and lawful. *See* R.C. 5717.04.

{¶27} Finally, Mr. and Mrs. Manolakis argue that Green failed to submit evidence to support the value it advocated. In essence, Mr. and Mrs. Manolakis argue that the so-called *Bedford* Rule applied to the instant matter. "The *Bedford* rule provides that the BTA generally may not rely on the auditor's original valuation as a default valuation when the board of revision has reduced the property's value based on the owner's evidence. When it applies, the rule requires a board of education to go forward with evidence on appeal to the BTA." (Internal citations omitted.) *Olentangy Local Schools Bd. of Edn.*, 152 Ohio St.3d 331, 2017-Ohio-8843, at ¶ 22. "[T]he *Bedford* rule applies only when the evidence of value that the owner presented to the board of revision was competent and at least minimally plausible." (Internal quotations and citation omitted.) *Id.* at ¶ 23. In addition, for the *Bedford* rule to apply, "the board of revision's reduction in value must have been based on appraisal evidence, not a sale price." *Huber Heights City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 154 Ohio St.3d 332, 2018-Ohio-4284, ¶ 13. "In the absence of probative evidence of a lower value, a county board of revision and the BTA are justified in fixing the value at the amount assessed by the county auditor." (Internal quotations and citations omitted.) *Vandalia-Butler City School Dist. Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 106 Ohio St.3d 157, 2005-Ohio-4385, ¶ 12; *see also South-Western City School Bd. of Edn v. Franklin Cty. Bd. of Revision*, 152 Ohio St.3d 548, 2018-Ohio-919, ¶ 21 (noting that "[e]ven if some evidence tends to negate the auditor's original valuation, it is proper to revert to that valuation when the BTA finds that the owner has not

proved a lower value and there is otherwise no evidence from which the BTA can independently determine value") (Internal quotations, emphasis and citations omitted.).

**{¶28}** Here, in light of our determination above, we cannot say that the BTA was unreasonable in concluding that the evidence of value presented by Mr. and Mrs. Manolakis to the BOR was not sufficient. Moreover, given the record before it, the BTA rejected the notion that the previous $800,000 sale of the property at sheriff's sale could be indicative of the property's value. Mr. and Mrs. Manolakis have not challenged that conclusion on appeal, and acknowledge that they "never suggested that the foreclosure sale price justified the reduction they were seeking." Accordingly, given the lack of evidence in the record to support a lower value, or any value, we conclude that is was reasonable and lawful for the BTA to adopt the auditor's valuation of the property.

**{¶29}** Mr. and Mrs. Manolakis' assignments of error are overruled.

III.

**{¶30}** Mr. and Mrs. Manolakis' assignments of error are overruled. The decision of the BTA is affirmed.

Decision affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Ohio Board of Tax Appeals, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

MATTHEW YACKSHAW, and JOSHUA A. LEMERMAN, Attorneys at Law, for Appellants.

ROBERT M. MORROW, Attorney at Law, for Appellee.

MARY JO SHANNON SLICK, Attorney at Law, for Appellee.

TIMOTHY J. WALSH, Attorney at Law, for Appellee.