[Cite as *Cincinnati City School Dist. Bd. of Edn. v. Cincinnati*, 2021-Ohio-2653.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CINCINNATI CITY SCHOOL DISTRICT, BOARD OF EDUCATION, | : | APPEAL NO. C-210113 BTA CASE NO. 2019-1227 |
| Appellee-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| CITY OF CINCINNATI, | : | |
| Appellant-Appellee, | : | |
| and | : | |
| HAMILTON COUNTY BOARD OF REVISION, | : | |
| HAMILTON COUNTY AUDITOR, | : | |
| and | : | |
| TAX COMMISSIONER OF THE STATE OF OHIO, | : | |
| Appellees. | : | |

Appeal From: Ohio Board of Tax Appeals

Decision Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 4, 2021

*David C. DiMuzio* and *Matthew C. DiMuzio*, for Appellant Cincinnati City School District, Board of Education,

*Taft Stettinius & Hollister LLP*, *Russell S. Sayre* and *Nicholas J. Pieczonka*, for Appellee City of Cincinnati.

**WINKLER, Judge.**

Cincinnati City School District, Board of Education (the "BOE"), appeals a decision of the Board of Tax Appeals (the "BTA") valuing real property formerly owned by the city of Cincinnati at $10,990,000 for the 2018 tax year. Because we determine that the BTA's decision is supported by sufficient reliable, probative evidence, and is not otherwise unreasonable or unlawful, we affirm.

## Background

The property at issue in this case is the former home of a multi-story Macy's department store and parking garage near Fountain Square, located at 505 Vine Street in the central business district in downtown Cincinnati (the "Property"). The city owned the Property for several years until Macy's and the other retail tenants, including a bookstore and a restaurant, vacated. The city then sold the leasehold interest in the Property in December 2018 to the Cincinnati Center City Development Corporation ("3CDC") for $7.5 million.

For the 2018 tax year, the Hamilton County Auditor valued the Property at roughly $19 million. The city challenged the auditor's valuation in the Hamilton County Board of Revision ("BOR"). The BOE filed a counter-complaint with the BOR, requesting that the BOR adopt the auditor's $19 million value. The BOR agreed with the auditor's value, and the city appealed to the BTA.

At the BTA hearing, the parties' disagreement over the value of the Property stemmed largely from their differing views of the utility of the current building. The city presented testimony from Adam Gelter, 3CDC's executive vice president. Gelter explained that the layout of the existing building on the Property remained a barrier to redevelopment. The building was designed for a large, retail department store with three-and-a-half floors on three sides of the building, and four floors on one

2

corner. The building had been constructed with large floor plates, limited windows, and post-tensioned concrete. Gelter acknowledged that the building had been constructed in such a way as to withstand the addition of floors; however, according to Gelter, constructing additional floors would require stabilization and extra cost. Gelter also testified that adding additional floors would create building-code issues. At the time of the BTA hearing, the testimony showed that 3CDC had begun demolishing the interior of the building, and at least three-and-a-half floors had been demolished to shell condition.

The city introduced an appraisal from Roger Thornton. Thornton echoed Gelter's testimony regarding the lack of utility of the building on the Property. Using the sales-comparison approach to value the Property, Thornton relied on six comparable sales of buildings in the central business district. Thornton made adjustments to the comparable sales by taking into account the lack of utility of the current building on the Property. Thornton concluded that the Property had a proposed value of $30 per square foot for a total value of $10.99 million, including $4.1 million for the value of the parking garage.

The BOE introduced testimony from appraiser James Burt, who disagreed with Gelter's and Thornton's opinions as to the utility of the current building on the Property. Burt testified that the building had been constructed in 1997, which made it relatively new for downtown Cincinnati. Because the building could withstand additional floors, Burt testified that the interior of the building did not need to be totally gutted in order to allow for the highest and best use of the Property. Burt testified that he was unaware of any engineering studies or other documents that supported the city's theory that adding additional floors would not be financially sound.

Like Thornton, Burt also used the sales-comparison approach to value the Property. Burt relied on four comparable sales, two of which overlapped with Thornton's. Burt, however, appraised the Property at $55 per square foot. Instead of making downward adjustments as Thornton had for the lack of utility of the current building, Burt made upward adjustments based on his assumption that the building was relatively modern. Burt valued the Property at $16.73 million, including $4.1 million for the value of the parking garage.

Based on the testimony and appraisals at the BTA hearing, the BTA adopted Thornton's valuation and held that the Property value for the 2018 tax year totaled $10.99 million. This appeal by the BOE followed.

**Standard of Review**

R.C. 5717.04 governs appellate-court review of BTA decisions. Under R.C. 5717.04, if this court determines that the BTA's decision is "reasonable and lawful[,]" then it must affirm. In applying the reasonable-and-lawful standard under R.C. 5717.04, appellate courts "will defer to the BTA's factual findings, including determinations of a property's value, as long as they are supported by 'reliable and probative' evidence in the record." *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, 23 N.E.3d 1086, ¶ 21, quoting *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. Thus, where the BTA has before it two, competing appraisals, the BTA is afforded wide discretion in its determination regarding the credibility of the witnesses and the weight of the evidence. *Health Care REIT, Inc. v. Cuyahoga Cty. Bd. of Revision*, 140 Ohio St.3d 30, 2014-Ohio-2574, 14 N.E.3d 1009, ¶ 19, citing *EOP–BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9.

4

**First Assignment of Error**

In its first assignment of error, the BOE argues that the BTA failed to consider and weigh conflicting evidence. Specifically, the BOE argues that the BTA failed to consider: (1) Burt's expert testimony regarding the feasibility of adding more floors to the existing building; (2) evidence from both Burt and Thornton that the building's current improvements with renovations remained the highest and best use of the Property—not demolition; and (3) evidence regarding the appraisers' sales comparisons, including Burt's criticisms of Thornton's valuation.

The BOE relies on two Ohio Supreme Court cases reversing BTA decisions: *Lutheran Social Servs. of Cent. Ohio Village Hous., Inc. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 125, 2017-Ohio-900, 79 N.E.3d 541, and *South-Western City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 152 Ohio St.3d 122, 2017-Ohio-8384, 93 N.E.3d 947.

In *Lutheran Social Servs.*, the property owner challenged the auditor's valuations of two properties with the BOR, and the board of education filed a counter-complaint. The BOR adopted the auditor's original valuations, and the property owner appealed to the BTA. At the BTA hearing, the property owner relied on testimony and appraisals from its expert, and the board of education presented expert testimony of its own appraiser, who criticized the property owner's appraisals. The BTA adopted the values of the property owner's appraisals in a conclusory fashion, and made no mention of the expert testimony presented by the board of education. In reversing the BTA's decision, the Ohio Supreme Court held that "[a]lthough the BTA is not obliged to make formal findings of fact and conclusions of law, we have stated that the BTA must engage in sufficient discussion of the evidence to permit the court on appeal to determine whether the BTA acted reasonably and

5

lawfully." *Lutheran Social Servs.* at ¶ 12. Because the BTA had completely failed to address the competing appraisal submitted by the board of education when adopting the property owner's appraisal, the *Lutheran Social Servs.* court reversed the BTA's decision.

In *South-Western City School Dist.*, the property owner challenged the auditor's valuation of her property at the BOR by presenting comparable-sales documents that she had received from her real-estate agent. The BOR agreed to reduce the value of the home, and the school board challenged the reduction before the BTA. On appeal to the BTA, the BOR had failed to include the homeowner's comparable-sales documents as part of its record. The BTA recognized that the documents were not part of the record, but nevertheless upheld the BOR's decision. The school board appealed to the Ohio Supreme Court, which reversed the BTA's decision. The court held that the BTA had a duty to independently weigh the evidence, and that the BTA had erroneously deferred to the BOR by upholding the BOR's decision.

In this case, the BTA's decision does not suffer from a complete failure to mention competing evidence, present in *Lutheran Social Servs.*, or the rubber stamping of the BOR's decision present in *South-Western City School Dist.* The BTA's decision referred to Thornton's and Gelter's testimony, as well as Burt's competing testimony. The BTA stated that Burt had "indicated the building was created with a superadequate foundation to permit further improvement upward." Nevertheless, the BTA ultimately placed greater weight on Gelter's testimony that the Property "suffers from serious problems and demolishing would be appropriate." The BTA ultimately concluded that Thornton's appraisal was more probative because it "better accounted for the cost to demolish and redevelop the property."

6

The BTA held its own evidentiary hearing and had before it both competing appraisals. Thornton's appraisal took into account the problems with redeveloping the building, and thus Thornton made certain downward adjustments to the comparable sales. Burt's appraisal, on the other hand, assumed that the current building structure was relatively modern and could support additional floors. Thus, Burton made upward adjustments to the comparable sales.

This is a typical case of two competing appraisals, and the BTA did not commit a legal error in adopting Thornton's valuation of the Property. We overrule the first assignment of error.

**Second Assignment of Error**

In its second assignment of error, the BOE argues that the BTA erred in making several factual findings that were not supported by reliable and probative evidence in the record.

According to the BOE, the BTA erred in concluding that Thornton had valued the Property as if it were demolished and ready for development. The BOE's argument assumes that the BTA's use of the word demolition means a total demolition of the building. However, reading the BTA's decision as a whole and in context with the hearing testimony, the BTA's use of the word demolition refers only to the interior of the structure, which had serious issues in terms of marketability, according to Gelter. Thornton made downward adjustments to the comparable sales to account for his opinion that the current building structure had problems.

The BOE also argues that the BTA erred in finding that Burt's appraisal report lacked the same types of data as Thornton's. The BOE argues that Burt examined the same data as Thornton, and that some of their comparable sales even overlapped. Again, the BOE's argument takes words in the BTA decision out of context. Reading

7

the BTA's decision as a whole, it is clear that the data lacking in Burt's report to which the BTA refers is the downward adjustments to the comparable sales based on the assumption that the current building is not conducive to the highest and best use of the Property. Furthermore, Burt's appraisal relied on a comparable sale of the Duttenhofer Building, which had new mechanicals and elevator shafts, and could have been repurposed as an office without any renovations. The Duttenhofer Building had a sale price of $61.55 per square foot, which was much higher than the other comparable sales used by either appraiser.

Finally, the BOE argues that the BTA erred in finding that Gelter believed the Property should be demolished, and erred in finding that the building was a "failed use." According to the BOE, Gelter's testimony fell short of definitively establishing that the building would be demolished. The BOE again misinterprets the word demolition as used by the BTA. At the time of the BTA hearing, every tenant had vacated the Property, 3CDC had demolished most of the building's interior, leaving it in shell condition, and 3CDC had not found any tenants for the Property.

We determine that the BTA's factual findings are supported by reliable and probative evidence in the record. We overrule the second assignment of error.

## Conclusion

In sum, the BTA's decision is reasonable and lawful; therefore, we affirm.

Decision affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:
    The court has recorded its own entry this date.

8